AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California



FILED
OCT 28 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Jorge Lamas | ) | Case No. 2:19-MJ-181 ____ EFB |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 1, 2019 - October 25, 2019__ in the county of __El Dorado__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846(a)(1), 841(a)(1) | Conspiracy to Manufacture at least 50 Marijuana Plants |
| 21 U.S.C. § 841(a)(1) | Manufacture at least 50 Marijuana Plants |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT OF DEA TASK FORCE OFFICER DAVE STEVENSON

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Dave Stevenson, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/27/2019__

_____
*Judge's signature*

City and state: __Sacramento, California__   United States Magistrate Judge Edmund F. Brennan
*Printed name and title*

# AFFIDAVIT OF DEA TASK FORCE OFFICER DAVE STEVENSON

I, Dave Stevenson, being duly sworn, hereby depose and state:

## Purpose

1. This Affidavit is made in support of a criminal complaint and arrest warrant for Jorge Lamas for:

   **COUNT ONE:**   Conspiracy to Manufacture at least 50 Marijuana Plants, in violation of 21 U.S.C. §§ 846 and 841(a)(1)

   **COUNT TWO:**   Manufacture at least 50 Marijuana Plants, in violation of 21 U.S.C. § 841(a)(1)

   **COUNT THREE:** Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)

## Agent Background

2. I am a Task Force Officer with the Drug Enforcement Administration. I have been a DEA TFO since 2017. I have 23 years of experience as a Sheriff's deputy with the El Dorado County Sheriff's Office and 6 years of experience as an investigator for the El Dorado County District Attorney's Office.

3. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

1

5. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

## Statement of Probable Cause

### *Private land owner leases land for marijuana cultivation operation.*

6. On July 1, 2019, Christopher Ross entered into a marijuana cultivation agreement with an individual he knew as "Jaime." As part of the agreement, Ross allowed "Jaime" and his associates to grow marijuana on Ross's property at 4740 Sand Ridge Road in Placerville, California. In exchange, Jaime promised to pay Ross $13,000. As some point, "Jaime" gave $2,000 in cash and a Jeep Cherokee valued at $8,000 to Ross. The balance of $3,000 was to be paid at the end of the marijuana cultivation season.

7. Beginning in September 2019, Juan Carlos Vasquez (aka "Paco") began living on the Sand Ridge Road property in a tent near the marijuana garden. Vasquez was in charge of cultivating the marijuana and maintaining security of the marijuana garden.

8. In early October, Ross saw Vasquez in the marijuana garden in possession of a firearm and became aware that Vasquez fired two rounds from the firearm while in the marijuana garden.

### *Ross becomes concerned that his co-conspirators will not pay him.*

9. In mid-October, Ross, recognizing that the marijuana in the marijuana garden was nearly ready to harvest, became concerned that "Jaime" and his associates would not pay him the remaining $3,000 balance. Ross noticed that some of the marijuana tops had already been removed.

10. On October 20, 2019, Ross observed that a Hispanic male (later identified as Ramiro Morales) arrived on the property to assist with the cultivation and

harvesting of the marijuana. Like Vasquez, Morales began living on the Sand Ridge Road property near the marijuana garden.

### *Ross called 911 and provided false information.*

11. On October 23, 2019, at 12:25 a.m., Ross called 911 to report a "robbery." Ross told the 911 operator that, "I am a farmer . . . I grow marijuana." Ross claimed five people were up in "my grow site" taking his marijuana. Ross said that the people were also going onto his neighbor's property. While talking with the 911 operator, Ross claimed that the people were actively in his marijuana grow with flashlights.

12. At no point did Ross tell the 911 operator that he knew that two people were living in the grow and that he had a business agreement with them. At no point did Ross tell the 911 operator that the people living in the grow were armed.

13. At 12:40 a.m., the 911 operator called Ross back to inform Ross that Sheriff's deputies were on their way to his property. The 911 operator asked if the robbers were still on his property and Ross said, "I'm sure they're still there." Ross provided the operator directions to the marijuana grow. Ross also told the 911 operator that he had seen a drone and that Ross believed that the drone was being used by the robbers for "keeping an eye on me."

14. At no point during this second call with 911 did Ross inform the 911 operator that he knew that two people were living in the grow and that he had a business agreement with them. And, at no point during this second call with 911 did Ross tell the 911 operator that the people living in the grow were armed.

### *Law enforcement officers respond to the false 911 call.*

15. In response to the 911 call, law enforcement officers from the El Dorado Sheriff's Office responded to Ross's property. Sheriff's deputies located the marijuana grow on Ross's property and identified themselves. Upon Sheriff's deputies identifying themselves as law enforcement officers, the Sheriff's deputies came under gun fire. One of the Sheriff's deputies was shot and killed. Another deputy was shot and wounded. Sheriff's deputies returned fire.

16. Shortly after the firefight between Sheriff's deputies and Ross's co-conspirators, and approximately 45 minutes after his first call to 911, Ross called back to 911. Ross told the 911 operator that it sounded like someone had tried to get into his house and that he had heard "probably like 50 shots" fired.

17. At no point during this third call with 911 did Ross inform the 911 operator that he knew that two people were living in the grow and that he had a business agreement with them. And, at no point during this third call with 911 did Ross tell the 911 operator that the people living in the grow were armed.

### *Morales and Vasquez arrested after fleeing from the marijuana garden.*

18. Morales was taken into custody while fleeing away from the marijuana garden. Morales was interviewed and admitted to arriving on the property on October 20, 2019, to help cultivate and harvest the marijuana. Morales told law enforcement that he had seen lights in the early morning of October 23, 2019 and told Vasquez that people were coming. Morales gave Vasquez a firearm that Vasquez then fired at the Sheriff's deputies. During the gun fight, Vasquez suffered a gunshot wound. Morales assisted Vasquez to flee from the marijuana garden. Morales admitted to hiding the gun during their flight. Morales was identified by his Mexican consular ID.

19. Vasquez was taken into custody while fleeing away from the marijuana garden. Vasquez was interviewed and admitted that he was hired in September to cultivate marijuana and protect the marijuana garden. Vasquez admitted that he saw lights approaching the marijuana grow in the early morning of October 23, 2019, and fired at least 15 rounds during the gun fight. Vasquez said that the believed the lights belonged to people coming to rob him. Vasquez did not have any form of identification.

### *Another 911 call by a member of marijuana conspiracy.*

20. Approximately five hours after the firefight at the Sand Ridge Road marijuana garden, the El Dorado County Sheriff's Office 911 dispatch received a 911 call from an individual who identified himself as "Jorge." Jorge told the 911 operator that he only spoke Spanish. A short time later, at

6:49 a.m., the 911 operator called Jorge back and spoke to Jorge with the assistance of a Spanish-English translator.

21. Jorge told the operator that he believed that when he called 911, law enforcement officers would come. Jorge did not know the address of where he was located. Jorge said that he was at a marijuana ranch and thieves starting shooting. Jorge said that he ran away when this happened. Jorge said that he and another, unidentified person were paid to take care of the marijuana ranch. As the 911 operator was asking Jorge for more information, he hung up. Because Jorge could not identify the location of the marijuana ranch, the 911 operator was not sure if Jorge was referring to the earlier shooting at the Sand Ridge Road property or some other marijuana cultivation site.

22. Two days later, on October 25, 2019, the United States Marshals Service located and arrested Jorge in Yuba City, California. At the time of his arrest, Jorge had a cellular telephone on his person. This cellular telephone was the same phone that had been used to call 911 on October 23. "Jorge" was further identified as Jorge Lamas by his California driver's license.

### *Jorge Lamas identified as fourth member of the conspiracy.*

23. After his arrest, Lamas was interviewed by law enforcement officers. Lamas admitted to participating in a marijuana cultivation conspiracy that was run out of Mexico. Lamas was paid $150 a day to supervise related marijuana cultivation operations divided into smaller marijuana gardens on rural private land. Lamas was paid by a person in Mexico.

24. Lamas admitted that he supervised Vasquez and Morales as part of the marijuana growing operation at 4740 Sand Ridge Road.

25. Lamas also identified a marijuana garden that he supervised located at 6646 Citabria Lane, Georgetown, California.

### *Law enforcement officers search the Sand Ridge Road property and Citabria Lane property.*

26. After the firefight in the early morning of October 23, law enforcement officers searched the Sand Ridge Road marijuana garden. Law enforcement

officers identified approximately 100 large, flowering marijuana plants in the Sand Ridge Road marijuana garden. The Sand Ridge Road marijuana cultivation operation was not in compliance with state and local rules and regulations related to marijuana cultivation. Marijuana is a Schedule I controlled substance.

27. Also at the Sand Ridge Road property, law enforcement officers found a loaded, black Smith & Wesson Model 59 9mm pistol hidden in dense brush. The magazine contained four rounds of ammunition.

28. On October 26, 2019, law enforcement officers searched the marijuana garden on Citabria Lane in Georgetown. Law enforcement officers found 99 marijuana stalks that had been recently harvested and two live marijuana plants. The Citabria Lane marijuana cultivation operation was not in compliance with state and local rules and regulations related to marijuana cultivation.

29. Also at the Citabria Lane property, law enforcement officers found the box for the cellular telephone that Lamas used to call 911.

///

///

///

///

///

///

///

///

///

///

6

## Conclusion

30. Based on the above information, I believe that Jorge Lamas has committed the following violations of federal law:

   **COUNT ONE:** Conspiracy to Manufacture at least 50 Marijuana Plants, in violation of 21 U.S.C. §§ 846 and 841(a)(1)

   **COUNT TWO:** Manufacture at least 50 Marijuana Plants, in violation of 21 U.S.C. § 841(a)(1)

   **COUNT THREE:** Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)

31. I hereby request that a criminal complaint and arrest warrant be issued for Jorge Lamas based on the aforementioned facts.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Dave Stevenson
Task Force Officer, DEA

Sworn and Subscribed to me
on October 27, 2019,

Hon. EDMUND F. BRENNAN
United States Magistrate Judge

Approved as to form:

JUSTIN L. LEE
Assistant United States Attorney

## PENALTY SLIP

### United States v. Jorge Lamas

**COUNT ONE:** 21 U.S.C. §§ 846 and 841(a)(1) – Conspiracy to Manufacture at least 50 Marijuana Plants

Imprisonment of up to 20 years; and
Fine of up to $1,000,000
Term of Supervised Release of at least 3 years and up to life

**COUNT TWO:** 21 U.S.C. § 841(a)(1) – Manufacture at least 50 Marijuana Plants

Imprisonment of up to 20 years; and
Fine of up to $1,000,000
Term of Supervised Release of at least 3 years and up to life

**COUNT THREE:** 18 U.S.C. § 924(c) – Possession of a Firearm in Furtherance of a Drug Trafficking Offense

Mandatory Minimum of 5 years in prison and a maximum of up to life in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 5 years

**COURT ASSESSMENT:**   $100 (mandatory on each count)